IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sheila Webb, ) | C/A No.: 3:19-2031-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| Leon Lott, in his capacity as ) | |
| Sheriff of the Richland County ) | |
| Sheriff's Department, and ) | |
| Cameron Duecker, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Sheila Webb ("Plaintiff") originally filed this matter in the Court of Common Pleas for Richland County, South Carolina, asserting claims against Leon Lott ("Lott"), in his capacity as Sheriff of the Richland County Sheriff's Department ("RCSD") and Cameron Duecker ("Duecker"). Plaintiff brings this action pursuant to the South Carolina Tort Claims Act ("SCTCA") and 42 U.S.C. § 1983, concerning Plaintiff's arrest, effected by Duecker, and subsequent confinement, occurring on February 1, 2019. On July 19, 2019, Lott removed the action to this court.

This matter comes before the court on Plaintiff's motion to amend her complaint and for joinder of RCSD Corporal David Fairbanks ("Fairbanks"),

Duecker's shift supervisor. [ECF No. 21]. The motion having been fully briefed [ECF Nos. 29, 32], it is ripe for disposition.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned denies Plaintiff's motion.

I.  Factual and Procedural Background

   A.  Plaintiff and Lott's Allegations

Relevant to the resolution of the instant motion, Plaintiff alleges that on or about February 1, 2019, she called 911 from her home to report that her brother, William Gossett ("Gossett") was unlawfully using their mother's vehicle. [ECF No. 12 ¶ 17]. Duecker responded to Plaintiff's call and decided to arrest Plaintiff for disorderly conduct and assault while resisting. *Id.* ¶ 18. In effecting the arrest, Duecker repeatedly used his taser on Plaintiff's chest and abdomen. *Id.* ¶ 19. On or about February 22, 2019, Duecker was charged with and arrested for assault and battery, third degree, for his use of force on Plaintiff during the arrest. *Id.* ¶ 22.

---

[1] Duecker has filed answers in response to Plaintiff's complaint and amended complaint, [*see* ECF No. 6, 13], but did not join in the removal of the action to this court and has not responded to Plaintiff's instant motion to amend her complaint and for joinder.

> Lott provides the following statement of the facts of the case:
>
> On February 1, 2019, the Defendant Duecker, a RCSD deputy, was dispatched to a stolen vehicle call at Plaintiff's residence in Richland County, South Carolina. Upon his arrival, Duecker encountered Plaintiff, who was intoxicated and thereafter became engaged in a verbal argument. This resulted in Duecker entering the residence and attempting to place handcuffs on Plaintiff.
>
> Plaintiff fled to a rear bedroom at which time Duecker informed her that she was under arrest. As Plaintiff resisted apprehension and being handcuffed, Duecker then repeatedly deployed his Taser, drive stunning Plaintiff in the thigh and then firing Taser probes into her chest. Duecker's Taser was deployed a total of ten times on Plaintiff. Plaintiff was treated by Richland County Emergency Medical Services and was subsequently booked into the Alvin S. Glenn Detention Center on the charges of Breach of Peace and Resisting Arrest (Assault on an Officer).
>
> Following an investigation by the Defendant Sheriff, Duecker was determined to have acted inappropriately as well as in a criminal manner. Duecker was terminated and arrested on February 22, 2019 for Assault and Battery, Third Degree.

[ECF No. 7 at 2].

Plaintiff's amended complaint asserts claims against Duecker for actions taken by him on February 1, 2019, and claims against Lott pursuant to the SCTCA, which "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity," where the employee "commits a tort while acting within the scope of his official duty." S.C. Code Ann. § 15-78-70(a). More specifically, Plaintiff is bringing suit for violation of her Fourth and Fourteenth Amendment rights and, under state law, for gross negligence and recklessness, false imprisonment, intentional infliction of

emotional distress, defamation/defamation per se, assault, battery, malicious prosecution, negligence per se, negligent hiring, and lack of supervision. [*See* ECF No. 12]. In his answer to Plaintiff's amended complaint, Lott states that Duecker "was acting outside the course and scope of his employment as a RCSD deputy, not acting in the furtherance of the Sheriff's official business, and therefore, this Defendant is not liable for the Defendant Duecker's conduct . . . ." [ECF No. 14 ¶ 4].

B.  References to Fairbanks in Discovery

During discovery, Lott first identified Fairbanks as follows on August 29, 2019, in his Local Rule 26.03 Answers to Interrogatories:

> This fact witness, a corporal with the RCSD, was Duecker's supervisor and was present during portions of Duecker's interactions with Plaintiff. He is expected to testify regarding his knowledge of the relevant events and consistent with his observations during the events giving rise to this action.

[ECF No. 7 at 3].

Three weeks later, on September 20, 2019, Lott provided Plaintiff with the following:

- Fairbanks' employment status with RCSD; his position as supervisor as it pertained to Duecker at the relevant times; his rank; and confirmation of his presence at the scene as well as witness to portions of Duecker's interactions with Plaintiff; and
- Fairbanks' four (4) page written statement dated February 15, 2019; and
- Multiple body worn camera (BWC) videos from deputies who responded to Plaintiff's residence.

[ECF No. 29 at 3; ECF No. 29-1; ECF No. 29-2].[2]

Plaintiff filed a motion to amend her complaint on October 23, 2019, which was granted,[3] and, subsequently, both Duecker, on December 3, 2019, and Plaintiff, on February 7, 2020, were deposed, and in both depositions Fairbanks' presence during some of the events in question was discussed. [*See* ECF No. 29-4; ECF No. 29-5].

C.     Fairbanks' Deposition

Due to extenuating circumstances, Fairbanks was not deposed until July 16, 2020, and on August 3, 2020, Plaintiff received Fairbanks' deposition transcript. [ECF No. 21-1 at 3]. At Fairbanks' deposition, counsel for RCSD indicated representation of Fairbanks on behalf of RCSD. [ECF No. 21-6 at 4:11–15].

---

[2] The video footage referenced has not been provided to the court. According to Plaintiff, the footage shows Fairbanks "consulted with Duecker regarding the basis for the Arrest of Plaintiff, however, failed to include Duecker's full explanation to Fairbanks for his tasing of Plaintiff and/or Fairbanks involvement in the final determination as to the Arrest and charges to eventually be levied against Plaintiff." [ECF No. 21-2 at 2]. According to Lott, the footage "[p]lainly depicted . . . Fairbanks' initial entry upon the scene, his immediate debriefing of Duecker following Plaintiff's apprehension, and Fairbanks' informal discussions with Duecker regarding potential charges for which Duecker could charge Plaintiff." [ECF No. 29 at 3]. Both Plaintiff and Lott appear to agree that, as stated by Lott, "Fairbanks did not arrive on the scene until after force was used and only appeared as Plaintiff was being handcuffed and taken into police custody," *id.* at 3 n.1.

[3] The relevant scheduling order issued by the court provided for a deadline of October 23, 2019, for submission of motions to join other parties and amend the pleadings. [ECF No. 5 at 1].

In his deposition, Fairbanks testified he spoke with Duecker prior to Duecker going to Plaintiff's residence. [ECF No. 29-6 at 31:12–16]. Thereafter, Duecker placed a call for backup, to which Fairbanks responded. *Id.* at 32:3–15. Duecker then placed a call indicating he was involved in a fight, and, shortly thereafter, Fairbanks and an additional officer, Deputy Kyle Oliver ("Oliver"), arrived at Plaintiff's residence. *Id.* at 32:15–33:11. Fairbanks and Oliver entered the residence, heard a struggle, saw Duecker standing over Plaintiff, and Oliver assisted in handcuffing Plaintiff. *Id.* at 33:13–16, 39:3–6.

Fairbanks stated that as the shift supervisor, it was his job "to help sort through the facts and assist my deputies in anything they needed," he "took over" for Duecker, and he and Oliver placed Plaintiff on her couch, and "[w]e really don't want to have conversations in front of . . . the subjects, so after everything was calmed down [Duecker and Fairbanks] went outside and we had a conversation." *Id.* at 35:9–12, 39:8–11, 43:11–14.

Duecker informed Fairbanks that he was going to charge Plaintiff with filing a false police report and assaulting a police officer while resisting arrest, and Fairbanks "immediately told [Duecker] that was not the correct charge due to the civil nature of the call" and that after discussion between the two of them, "it was decided by both of us that due to her [demeanor] and level of intoxication, breach of peace would be the more appropriate charge."

6

*Id.* at 43:15–24. Fairbanks confirmed that he believed there was no probable cause to charge Plaintiff with filing a false police report, *id.* at 44:6–45:3, and Duecker and Fairbanks were led to the charge of breach of peace because of "the initial contact at the front door where [Plaintiff] was yelling, using profanity, screaming at the front door," *id.* at 45:14–18.[4]

In response to the question "[i]f you had told [Duecker] that [Plaintiff] had not committed a crime or there was not probable cause to charge her with committing a crime, would he have followed your instruction not to further arrest her," Fairbanks testified as follows:

> I do not tell my deputies to make charges or not to make charges. I have always based my squad's – if they want to make a charge, if they don't want to make a charge, that's their decision, and I will help support them. I'm never going to tell them that person needs to be arrested or that person does not [need to] be arrested.

*Id.* at 46:9–47:1. Thereafter, Fairbanks additionally testified as follows:

> [Duecker] decided; I supported him in his decision. We – we had a conversation, I gave him suggestions. I gave him suggestion what's – what's good, what's not good, what's – what we could do. He made the decision on the charges . . . . the way I run my shift, deputies make their decisions and I either say that's a good idea or not . . . .

---

[4] Fairbanks additionally testified that Duecker did not tell him that Plaintiff "had walked outside of her home" and that Fairbanks had no evidence that Plaintiff had done so. [ECF No. 29-6 at 46:1–8].

*Id.* at 52:17–22, 53:9–11. Fairbanks then agreed that if saw a deputy on his shift committing an unlawful arrest, he would feel he had a duty to intervene. *Id.* at 53:15–20.

Fairbanks testified he later reviewed the body cam video evidence, comparing that evidence with what Duecker had informed him when Fairbanks arrived on the scene:

> Q: In your discussion with Deputy Duecker just before supporting his charge of breach of peace, did that conversation differ from what – in any way in information, from what he told you from what you observed on his body camera some two weeks later?
>
> A: It was not exactly the same; no sir.
>
> Q: What was different?
>
> A: It seemed to be a little exaggerated.
>
> Q: Which part?
>
> A: The way that Deputy Duecker handled the situation. From his statement, from what he told me, the body cam showed it to be exaggerated . . . . Instead of the – the – the civil issue that we had discussed, when he told me on – on the scene what had happened, he made it seem that there was more criminal activity than the civil issue . . . . When we initially talked, that he said that he was placing her under – under arrest for filing the false police report . . . . Then we determined that that was not it. The exaggeration came – I believe he should not have – if I had known the conversation that he had with Ms. Webb where he wanted to file – put the charge of filing a false police report, if I knew the conversation had happened the way it happened, I would not have supported his charge.

*Id.* at 55:12–57:8.

It appears that counsel then tried to clarify where on the body cam evidence the referenced "exaggeration" occurred, and asked "up until him effectively trying to take her into detention, you believe that his explanation to you on scene was to the best of your recollection, if not identical than substantively the same as what you witnessed on the body cam," to which Fairbanks agreed,[5] further stating that the exaggeration occurred during their physical interaction in that "[Duecker] kept referring to it as a fight and I don't believe I witnessed the fight on the body cam." [ECF No. 21-6 at 58:2–22].[6]

D.    Plaintiff's Motion to Amend Complaint and for Joinder

Following Fairbanks' deposition, on August 5, 2020, Plaintiff's counsel notified opposing counsel of his intent to move to amend Plaintiff's complaint and "join Fairbanks as a defendant for violation of 1983 and to further clarify Plaintiff's claims under the SCTCA to specifically identify the actions of Fairbanks" and Oliver. [ECF No. 21-2 at 4]. On August 14, 2020, Plaintiff

---

[5] Lott appears to argue that Fairbank's testimony here references Duecker effectively trying to take Plaintiff into detention, recounted by Duecker as follows: "[Plaintiff] continued to be irate and I tried to explain the civil nature of the call and that any issue was between Gossett and his mother. As she retreated back into the house, Gossett reiterated that this was an ongoing issue and I decided to detain her for filing a false complaint. I withdrew my handcuffs as she retreated further into the house." [ECF No. 29 at 11–13 (citing ECF No. 29-3 at 3)].

[6] Fairbank additionally testified that Duecker was acting within the scope of his duties as a RCSD deputy during Plaintiff's arrest. [ECF No. 21-6 at 60:18–61:9].

9

filed the instant motion to amend her complaint and for joinder. [ECF No. 21].

Turning to Plaintiff's proposed amended complaint, Plaintiff seeks to identify Fairbanks as a defendant, [*see* ECF No. 21-1 ¶¶ 2, 3, 4, 7], and seeks to allege as follows:

> Fairbanks and Oliver assisted in the initial detention of Plaintiff and subsequently Fairbanks authorized Plaintiff's arrest as Duecker's supervisor officer and/or supported Duecker's unlawful arrest of Plaintiff and/or failed to prevent Duecker's unlawful arrest of Plaintiff after becom[ing] fully apprised of the circumstances for Duecker's initial tazing Plaintiff.

*Id.* ¶ 20.[7]

II. Discussion

    A.    Standard on Motion to Amend and for Joinder

Leave to amend should be freely granted under Fed. R. Civ. P. 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). When a party wishes to amend after the deadline set in the scheduling order,

---

[7] Although Plaintiff's proposed amended complaint generally references "Defendants" throughout, Plaintiff's only other proposed specific reference to Fairbanks alleges that "Fairbanks acted under color of state law" and that "Duecker and Fairbanks acts and omissions constituted a seizing, confinement and use of excessive force on Plaintiff proximately causing a violation of Plaintiff's Fourth and Fourteenth Amendment rights . . . ." [ECF No. 21-2 ¶¶ 30, 32].

the party must, under Fed. R. Civ. P. 16, show good cause to modify the scheduling order deadlines before also satisfying the Rule 15(a) standard for amendment. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). "Rule 16(b)'s good cause standard focuses on the reason for [the amendment's] tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel County, MD*, 182 Fed App'x 156, 162 (4th Cir. 2006) (citation omitted).

Fed. R. Civ. P. 19(a) sets forth when a party should be joined as a necessary party, including if "in that person's absence, the court cannot accord complete relief among existing parties." Additionally, Fed R. Civ. P. 20(a)(2)(A) provides a party:

> may be joined in one action as defendants if []any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [] any question of law or fact common to all defendants will arise in the action.

As with motions to amend, when a party wishes to join another party after the deadline set in the scheduling order, the party must, under Fed. R. Civ. P. 16, show good cause to modify the scheduling order deadlines. *See, e.g., Conner v. Amano Cincinnati, Inc.*, C/A No. 2:07-3581-PMD, 2008 WL 11349777, at *4 (D.S.C. May 28, 2008) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)); *Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 102 (D.S.C. 2009) ("Plaintiffs also attempt to show good cause for joining

11

Wells Fargo Bank to this action by designating it a 'necessary party' under Rule 19.").

    B.    Analysis

        1.    Newly Discovered Information

Plaintiff filed the instant motion to amend and to join Fairbanks approximately ten months after the deadline elapsed. Notwithstanding, Plaintiff argues that based on newly-discovered information, her motion should be granted. More specifically, Plaintiff's motion hinges on her assertion that at Fairbanks' deposition, she "learned for the first time that . . . Fairbanks acted upon the same information available to Duecker for which Duecker was criminally charged," and that "Fairbanks was fully informed of the facts regarding Duecker's unlawful subjugation and detention of Plaintiff and that Fairbanks supported, authorized and/or failed to prevent the Arrest of Plaintiff despite recognizing a general duty not to allow an unlawful arrest." [ECF No. 21-2 at 3, 7].[8] Lott disagrees, arguing that Plaintiff and her counsel, for the last twelve months, "have been wholly familiar with

---

[8] Plaintiff also asserts that she learned for the first time from Fairbanks' deposition that "Fairbanks had compared Duecker's explanation of the events on the scene with the Footage" and that what he saw was substantially the same as Duecker's recitation of events up to a certain point, [ECF No. 21-2 at 7; *see also* ECF No. 29-6 at 55:12–57:8; ECF No. 21-6 at 58:2–22]; however, Plaintiff does not make clear the legal significance of this assertion.

Fairbanks' presence and role at the scene, in addition to his complete involvement at the relevant times." [ECF No. 29 at 2].

Plaintiff has failed to carry her burden to show good cause. Plaintiff has put forth no evidence, and Fairbanks' deposition testimony as provided by the parties also provides none, that Plaintiff recently discovered Fairbanks violated her constitutional rights or that he had any previous indication or concurrent knowledge during the course of Plaintiff's detention that her arrest was unlawful or that Duecker had engaged in unlawful behavior prior to Fairbanks' arrival on the scene. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (holding that in a §1983 action, "liability is personal, based upon each defendant's own constitutional violations"); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted) (holding that to assert supervisory liability, a plaintiff must show, in part, "actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff."); *Randall v. Prince George's County, Md.*, 302 F.3d 188, 204 (4th Cir. 2002) (holding to assert bystander liability, a plaintiff must show, in part, that a defendant "knows that a fellow officer is violating an individual's constitutional rights.").

Although Plaintiff argues that she "was unable to determine from the Footage whether Fairbanks had sufficient knowledge of the circumstances to

share liability with Duecker until Fairbanks' deposition," [ECF No. 21-2 at 7], Plaintiff has failed to show testimony from Fairbanks' deposition that remedies this gap. As of September 20, 2019, Plaintiff was in receipt of the body cam video footage, which, as admitted by Plaintiff, shows Fairbanks "consulted with Duecker regarding the basis for the Arrest of Plaintiff." *Id.* at 2. Although Plaintiff argues the footage "failed to include Duecker's full explanation to Fairbanks for his tazing of Plaintiff and/or Fairbanks involvement in the final determination as to the Arrest and charges to eventually be levied against Plaintiff," *id.*, implying Fairbanks' deposition did provide such an explanation and this explanation provides a basis for Fairbanks' liability, review of Fairbanks' deposition does not so indicate.

> Similarly, Plaintiff argues:
> 
> Defendant has failed to point to evidence, prior to Fairbank's deposition on July 16, 2020, tending to establish Plaintiff possessed evidence Fairbanks knew Plaintiff had never emerged from her residence requiring Duecker possess a warrant, or labor under limited extenuating circumstance, to proceed with any arrest subsequent to the initial detention; supported by probable cause or not . . . . Accordingly, the Video ends after Fairbanks and Duecker discuss probable cause and/or Plaintiff's potential criminal violations but does not evince Duecker explaining to Fairbanks that he entered the residence without legal authority.

[ECF No. 32 at 2]. Again, however, Plaintiff has failed to provide any evidence from the deposition that indicates Fairbanks knew at the time of Plaintiff's arrest that Duecker lacked probable cause to charge Plaintiff with

14

breach of peace and assaulting an officer or that he knew Duecker had entered Plaintiff's residence without legal authority.[9] *See Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) ("If the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party cannot establish good cause under Rule 16."); *see also Woodson v. Fulton*, 614 F.2d 940, 943 (4th Cir. 1980) (holding that undue delay can serve as a basis to deny leave to amend, especially where plaintiff's attorney "had been aware of a possible [new] claim for some time").

2.     Fairbanks as a Necessary Party

Plaintiff additionally argues that good cause exists for joining Fairbanks to this action in that he is a "necessary party" under Rule 19, and:

> . . . justice requires that Plaintiff be allowed to assert 1983 claims against Fairbanks, and further clarify her SCTCA claims in order

---

[9] To the extent Plaintiff argues that because Fairbanks had no knowledge that Plaintiff "walked outside of her home" during the time period in question, Fairbanks knew there was no probable cause to arrest Plaintiff for breach of peace, Plaintiff has failed to provide any case law in support. *See, e.g., State v. Simms*, 774 S.E.2d 445, 447 (S.C. 2015) (citations omitted) ("A breach of the peace is a common law offense. Encompassing a broad range of conduct, South Carolina courts have analyzed a breach of the peace over the centuries as a crime defying strict definition."); *Matusiewicz v. Florence Cty. Sheriff's Office*, C/A No. 416-1595-DCC-KDW, 2019 WL 3416616, at *3 (D.S.C. May 30, 2019), report and recommendation adopted, C/A No. 4:16-01595-DCC, 2019 WL 3413385 (D.S.C. July 29, 2019) ("Timothy, however, was ultimately convicted on a charge of Breach of the Peace-non Aggravated on May 22, 2018 related to his conduct in his home during the incident at the center of his case.").

15

to abundantly notify RCSD, where Fairbanks acted in concert with Duecker knowing full well all the relevant circumstances in effecting the Arrest. In the absence of a 1983 claim against Fairbanks and SCTCA clarification, RCSD may be able to proceed with defending against their liability for Duecker's actions as a result of their having issued criminal charges against him while simultaneously approving the concomitant acts of Fairbanks as Duecker's supervisor and fellow tortfeasor. The end result could afford RCSD unilateral elective liability. Alternatively, if Plaintiff's Motion is granted, any success RCSD may obtain in avoiding liability for Duecker's Arrest because of their contention that his actions were so extreme as to fall out of the course and scope of his duties denying Plaintiff's recovery will then turn to the question of why RCSD should not be accountable for Fairbanks; affording Plaintiff more complete relief.

[ECF No. 21-2 at 6].

As the Fourth Circuit has recognized, the party arguing that another party must be joined has the burden to "show that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citations omitted). As argued by Lott, and not addressed by Plaintiff,[10] "[a]t best, Plaintiff argues Fairbanks is a possible joint tortfeasor." [ECF No. 29 at 18; ECF No. 32 at 5]. Such a role does not rise to the high threshold of being a necessary party. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (citations omitted) ("It has long been the

---

[10] Although Plaintiff argues that because "Defendant does not appear to take the same position with regard to Fairbanks who acted in concert with Duecker, Plaintiff will only be protected in the events Fairbanks is joined and it is established Duecker acted outside the scope of his duties," [ECF No. 32 at 5], as stated above, the court rejects Plaintiff's argument that Fairbanks' deposition testimony indicates Duecker and Fairbanks "acted in concert."

rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit . . . . The Advisory Committee Notes to Rule 19(a) explicitly state that a tortfeasor with the usual 'joint- and-several' liability is merely a permissive party to an action against another with like liability.").

In sum, Plaintiff has failed to provide good cause as to why the court should modify its scheduling order to allow her to amend her complaint and join Fairbanks.[11]

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned denies Plaintiff's motion to amend and for joinder. [ECF No. 21].

IT IS SO ORDERED.

*Shiva V. Hodges*

September 16, 2020　　　　　　　　　　Shiva V. Hodges
Columbia, South Carolina　　　　　　　United States Magistrate Judge

---

[11] It is unnecessary for the court to address Plaintiff's argument that, by not granting her motion, she "will be forced to prosecute two actions related to shared liability arising out of the same occurrence and likely situated in the same forum." [ECF No. 21-2 at 8].