IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sheila Webb, | ) | C/A No.: 3:19-cv-02031-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **ON BEHALF OF DEFENDANT LOTT** |
| Leon Lott, in his capacity as Sheriff of the | ) | |
| Richland County Sheriff's Department | ) | |
| ("RCSD") and Cameron Duecker, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## STATEMENT OF FACTS

Taking the facts in a light most favorable to Plaintiff, on February 1, 2019, Plaintiff, a 58 year old female, called 911 telecommunications from her Richland County residence. *See*, Dkt 12, ¶ 17. She reported to 911 personnel that her brother was unlawfully using their mother's vehicle. *Id*. Their mother had been bedridden at the time. *Id*. Meanwhile, the Defendant Duecker, a Richland County Sheriff's Department ("RCSD") deputy was dispatched to what was described as a stolen vehicle recovery call. *See*, Exh. A. Duecker was advised that a woman had claimed that her brother had taken a car without permission. *Id*. Duecker responded and located the subject vehicle in the driveway. *Id*. After checking with dispatch, Duecker determined that the vehicle had indeed not been reported stolen. *Id*.

At Plaintiff's residence, Duecker initially made contact with William Gossett, Plaintiff's brother, and sister-in-law. *Id*. Gossett explained that the vehicle belonged to his mother and he had permission to use it while she was in the Intensive Care Unit. *Id*. By this time, Plaintiff was present and appeared intoxicated, as she displayed slurred speech and an odor of alcoholic beverages. *Id*. The residents began to bicker among themselves. *Id*. Duecker explained that this was a civil matter between Gossett and his mother. *Id*. Plaintiff became

1

irate and raised her voice. *Id*. Duecker explained that if she continued to call the emergency line for this issue that she would be arrested for Unlawful Use of 911 Telecommunications. *Id*. She asked for Duecker's name and stated she was going to call Sheriff Lott. *Id*. She then retreated in her house. *Id*. Gossett stated to Duecker that this was an ongoing issue with his sister; that the family could not get any peace; and that Plaintiff would continue calling 911. Duecker inquired about the possible initiation of eviction protocols. *Id*. Plaintiff reappeared, continued to be irate, and then once again fled into the house. *Id*. It was at that point that Duecker decided to place Plaintiff in investigatory detention for filing a false police report. *Id*. Duecker unholstered his handcuffs and located Plaintiff in her bedroom. *Id*.

As Duecker attempted to apprehend Plaintiff, she resisted the handcuffing process which resulted in Duecker repeatedly deploying his Taser, drive stunning Plaintiff in the thigh and then firing Taser probes into her chest. *See*, Dkt 7, p. 2. Duecker's Taser was deployed a total of ten (10) times on Plaintiff. *Id*. Plaintiff was treated by Richland County Emergency Medical Services and was subsequently booked into the Alvin S. Glenn Detention Center on the charges of Breach of Peace and Resisting Arrest (Assault on an Officer). *Id*.

Following an internal investigation by the Defendant Sheriff, Duecker was determined to have acted inappropriately and in a criminal manner. *Id*. Duecker was terminated and arrested on February 22, 2019 for Assault and Battery, Third Degree. *Id*.

INSTANT CIVIL ACTION

In the above-captioned civil action, Plaintiff brought the instant action against the Defendant Duecker in his individual capacity pursuant to 42 U.S.C.A. § 1983 alleging that her Fourth and Fourteenth Amendment rights were violated and the Defendant Sheriff Lott in his official capacity, alleging state law causes of action for gross negligence, false imprisonment, intentional infliction of emotional distress, defamation/defamation per se, assault, battery

malicious prosecution, negligence per se, and negligent hiring, training, and supervision. *See generally*, Dkt 12.

The Defendant Sheriff in his official capacity now moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P., based upon the following grounds:

**I.  DUECKER'S CONDUCT FALLS UNDER THE EXCEPTION WITHIN §15-78-60(17) AND THEREFORE, THE DEFENDANT SHERIFF IS ENTITLED TO ABSOLUTE SOVEREIGN IMMUNITY FROM PLAINTIFF'S TORT CLAIMS**

  **A.  Analysis of S.C. Code Ann. §15-78-60(17)**

  **(1)  Duecker's Acting Beyond Scope of his official Duties**

  **(2)  Duecker's Actual Malice and Intent to Harm**

  **B.  Proper application of the Act justifies immunity for Defendant Sheriff**

**II.  TO EXTENT THAT THIS COURT FINDS THAT DUECKER ACTED WITHIN THE SCOPE OF HIS OFFICIAL DUTIES, THE DEFENDANT SHERIFF IS ENTITLED TO ABSOLUTE SOVERIGN IMMUNITY FOR STATE LAW CLAIMS[1]**

  **A.  Negligence/Gross Negligence**

  **B.  False Imprisonment**

  **C.  Intentional infliction of emotional distress**

  **D.  Defamation**

  **E.  Malicious Prosecution**

**III.  PLAINTIFF'S CAUSE OF ACTION RELATING TO THE DEFENDANT SHERIFF'S NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION IS WITHOUT MERIT AND SHOULD BE DISMISSED**

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[1]  To the extent applicable, the Defendant Sheriff reserves the right to assert additional legal defenses as to the causes of action for Assault (Sixth Cause of Action) and Battery (Seventh Cause of Action). *See*, Dkt 12, ¶¶ 52-57.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also*, *generally*, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

I.  **DUECKER'S CONDUCT FALLS UNDER THE EXCEPTION WITHIN §15-78-60(17) AND THEREFORE, THE DEFENDANT SHERIFF IS ENTITLED TO ABSOLUTE SOVEREIGN IMMUNITY FROM PLAINTIFF'S TORT CLAIMS**

A.  **Analysis of S.C. Code Ann. §15-78-60(17)**

It is undisputed that the Defendant Sheriff is a constitutional officer and thereby a state agency pursuant to the South Carolina Constitution and the Laws of the State of South Carolina and is subject to the terms and conditions of the Tort Claims Act. The Tort Claims Act lists thirty-seven exceptions to the general waiver of immunity in S.C. Code Ann. §15-78-60. If an act or omission falls under one of these exceptions, then the governmental entity would enjoy absolute immunity from suit.

S.C. Code Ann. §15-78-60(17) provides that governmental entities are not liable for a loss resulting from "employee conduct **outside the scope of his official duties** or which

4

constitutes actual fraud, ***actual malice, intent to harm,*** or a crime involving moral turpitude."
(Emphasis added)  Thus, the determination by this Court as to any potential liability on the
part of the Defendant Sheriff turns solely on the clear language of the South Carolina Tort
Claims Act.

Plaintiff's claims in her Amended Complaint exclusively center on the alleged actions
of Duecker, who was acting as a RCSD Sheriff's Deputy.  Therefore, this Court must decide
as a matter of law whether Duecker's conduct at the relevant times were (1) undertaken
outside of the scope of his official duties; or that which constituted (2) actual malice; or (3) an
intent to harm Plaintiff.  In the ensuing discussion, the Defendant Sheriff will demonstrate that
based upon the record in this matter, Duecker's actions clearly fall under this relevant
exception prescribed by the Act.

DUECKER ACTING BEYOND SCOPE OF HIS OFFICIAL DUTIES

Taking all facts in a light most favorable to Plaintiff, Duecker was acting beyond the
scope of his official duties during the events giving rise to this action.

"The remedy provided by [the Tort Claims Act] is the exclusive civil remedy available
for any tort committed by a governmental entity, its employees, or its agents except as
provided in § 15-78-70(b)." S.C. Code Ann. § 15-78-20(b).  "[The Tort Claims Act] constitutes
the exclusive remedy for any tort committed by an employee of a governmental entity." S.C.
Code Ann. § 15-78-70(a).  According to the Act, "[n]otwithstanding any provision of law, this
chapter, the 'South Carolina Tort Claims Act,' is the exclusive and sole remedy for any tort
committed by an employee of a governmental entity while acting within the scope of the
employee's official duty." S.C. Code Ann. § 15–78–200.

The Act's definition of an "employee" refers to "any officer, employee, or agent of the
State or its political subdivisions, including elected or appointed officials, law enforcement

officers, and persons acting on behalf or in service of a governmental entity in the scope of official duty." S.C. Code Ann. § 15–78–30(c).

The Act is intended to cover those actions committed by an employee within the scope of the employee's official duty. "The provisions of [the Act] establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State." S.C. Code Ann. § 15–78–20(f);  *see also, Wade v. Berkeley County,* 330 S.C. 311, 498 S.E.2d 684 (Ct. App.1998) (noting that § 15-78-20(f) limits coverage to employees acting within the scope of official duty).

According to the Act, "'Scope of official duty' or 'scope of state employment' means (1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C. Code Ann. § 15-78-30(i).

It is undisputed that during their February 1, 2019 encounter Duecker followed Plaintiff, a 58 year old female, within her residence and into her bedroom. *Supra*. Once there, Duecker located her in her bed. *See*, Pl. depo., pp. 21, 23. Despite Plaintiff being unarmed, Duecker proceeded to tase her repeatedly. *Supra*. RCSD Lt. Kevin Isenhoward, following a criminal investigation into Duecker's actions, pursued an arrest warrant on February 22, 2019 for assault and battery. *See*, Exh. B. In addition to: (1) RCSD having reviewed the file and determined his criminality, Duecker's conduct was further (2) considered by Richland County Magistrate Judge George A. Surles, who issued Arrest Warrant No. 2019A4010900098 for Assault and Battery, Third Degree for Duecker; and, finally, (3) the Fifth Circuit Solicitor who undertook the prosecution of Duecker. *Infra*.

Per Isenhoward at his July 16, 2020 deposition:

Q:     Did the Richland County Magistrate that considered [these facts] -- did Judge Surles also believe that the use of force was excessive and unreasonable in this case?

A:     Yes, he did.

Q:     Was [ ] Magistrate Judge [George A.] Surles [ ] neutral and detached from the underlying criminal investigation?

A:     Yes.

Q:     [ ] The body camera video, to your knowledge, and contents of this file was reviewed by the 5th Circuit Solicitor, Byron Gipson?

A:     Yes, sir.

Q:     And it was determined by Solicitor Gipson that the force used in this case, with respect to the Plaintiff, was unreasonable and excessive?

A:     Yes.

*See*, Isenhoward depo., pp. 95-96.

The Defendant Sheriff submits that a law enforcement officer who explicitly commits an unlawful act (*i.e.*, Duecker "unlawfully injur(ing) the victim by grabbing, pulling, and repeatedly tasing the victim,"[2] resulting in physical injuries to Plaintiff) is not only exceeding his authority but clearly acting in contravention with the official business of the Sheriff.[3] This is consistent not only with the official RCSD position, but prevailing law enforcement standards as articulated in Isenhoward's July 16, 2020 deposition:

Q:     [Duecker] deployed his taser approximately ten times with respect to Ms. Webb?

A:     Yes.

Q:     Are those circumstances consistent with the force training provided to deputies at the Richland County Sheriff's Department?

A:     No.

---

[2]     *See*, Exh. B.

[3]     *See, Crittenden v. Thompson–Walker Co.,* 288 S.C.112, 341 S.E.2d 385 (Ct. App. 1986) (distinguishing scope of servant's employment from scope of servant's authority and holding acts outside servant's authority are still within his scope of duty if done in furtherance of master's business).

Q: Is it consistent with the standards provided to law enforcement officers in general from a national standard?

A: No.

Q: [ ] Would you say that those actions by Deputy Duecker -- in other words, after the decision was made not to stop and to use force and to tase the lady ten times -- did that further the official business of the Richland County Sheriff?

A: No, in fact, it was outside of any scope of the Sheriff and law enforcement.

Q: So it was beyond the scope of his official duties as a law enforcement officer?

A: Yes, sir.

Q: And beyond the scope of his official duties as a Richland County Sheriff's Deputy?

A: Yes.

*See*, Isenhoward depo., pp. 95-97.

Courts have generally recognized that respondeat superior holds master liable to a third party for injuries caused by the tort of his servant committed within the scope of the servant's employment. *See, e.g., Froneburg v. Smith,* 406 S.C. 37, 743 S.E.2d 625, 633 (Ct. App. 2013). However, if the servant steps outside from the master's business for some wholly disconnected purpose, the master/servant relationship is temporarily suspended. No matter how short the time. *See, Kase v. Ebert,* 392 S.C. 57, 61-62, 707 S.E.2d 456, 458 (Ct. App. 2011); *see also*, *Doe v. Smith,* No.2014-UP-267, 2014 WL 2968925, at *1 (June 30, 2014).

"If scope of employment is a broader term than scope of official duties -- the term used in the governmental immunity statute -- it follows that acts not within the scope of employment are not within the scope of official duties." *See*, *Frazier v. Badger,* 361 S.C. 94, 102, 603 S.E.2d 587, 591 (2004).[4]

---

[4] *See, e.g.,* *South Carolina Med. Malpractice Lab. Ins. J.U.A. v. Ferry,* 291 S.C. 460, 663, 354 S.E.2d 378, 381 (1987) (explaining that the scope of professional services does not include all forms of conduct simply because the person in the profession engages in such conduct).

Consequently and based upon a plain reading of S.C. Code Ann. § 15-78-30(i) as well as additional provisions under the Act, Duecker's actions at the relevant times were outside the scope of his official duties as a RCSD deputy.

## DUECKER'S ACTUAL MALICE AND INTENT TO HARM

Plaintiff alleges in this matter that Duecker committed an assault and battery upon her. *See*, Dkt 12, ¶¶ 52-57. Duecker did so "by engaging in conduct which placed Plaintiff in a reasonable fear of bodily harm [and] inflicting upon her inappropriate and unwanted physical touching."[5] *Id.*, ¶¶ 53, 56. Additionally, Duecker "intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain such distress would result from his conduct." *Id.*, ¶ 42. In fact, the "conduct was so extreme and outrageous," that it "exceed[ed] all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." *Id.*, ¶ 43. Stated differently, Plaintiff alleges that Duecker's unlawful, intentional, and/or reckless conduct caused Plaintiff to suffer such severe emotional distress, "that no reasonable person could be expected to endure it." *Id.*, ¶¶ 44-45.

"Malice is the deliberate intentional doing of a wrongful act without just cause or excuse." *See*, *Eaves v. Broad River Elec. Coop., Inc.,* 277 S.C. 475, 479, 289 S.E.2d 414, 416 (1982). "Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person." *See, Law v. South Carolina Dept. of Corrections*, 368 S.C. 424, 437, 629 S.E.2d 642, 649 (2006). Actual malice has been found

---

[5]  *See, Mellen v. Lane*, 377 S.C. 261, 276, 659 S.E.2d 236, 244 (Ct. App. 2008) ("An 'assault' is an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct."); *Id.* ("The elements of assault are: (1) conduct of the defendant which places the plaintiff, (2) in reasonable fear of bodily harm."); *id.* at 277, 659 S.E.2d at 244 ("A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient ...." (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 230, 317 S.E.2d 748, 754 (Ct. App. 1984))); *Id.* at 277; *see also*, *White v. City of N. Charleston*, No. 2017-001930, 2020 WL 4516091, at *2 (S.C. Ct. App. Aug. 5, 2020).

where the "defendant actuated by ill will in what he did with the design to causelessly and wantonly injure the plaintiff." *See*, *Swicegood v. Lott,* 379 S.C. 346, 353, 665 S.E.2d 211, 213 (Ct. App. 2008).

In defining an 'intent to harm,' the Court of Appeals held that an "intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in misconduct towards an adult." *State Farm Fire and Cas. Co. v. Barrett,* 340 S.C. 1, 9, 530 S.E.2d 132, 136 (Ct. App. 2000).[6]

In light of the aforementioned authority setting forth these definitions of conduct, Plaintiff clearly takes the position in this litigation that Duecker's actions were egregious to the degree so as to constitute not only actual malice, but that he additionally acted with an intent to cause harm Plaintiff.

For these reasons, the Defendant Sheriff is entitled to absolute sovereign immunity for any such alleged loss resulting from his employee's conduct constituting actual malice and/or intent to harm pursuant to §15-78-60(17).

## B.    Proper application of the Act justifies immunity for Defendant Sheriff

A plain reading of the Tort Claims Act clearly demonstrates that the Defendant Sheriff should be shielded from liability based on the facts in the present case.

When interpreting a statute, the Court's primary function is to ascertain the intention of the legislature. The South Carolina Supreme Court has held that words used in the statute "must be given their plain and ordinary meaning without resorting to subtle or forced

---

[6]    Public official immunity does not protect officials from actions that were corrupt, malicious, or perpetrated outside and beyond the scope of official duties. An action is malicious where it is (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another. *Stafford v. Barnes,* 2016 WL 3580752, at* 5. (M.D. N.C. June 28, 2016). The test by which a tort is to be characterized as reckless, willful, or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the [plaintiff's] rights. *Rogers v. Florence Printing Co.,* 233 S.C. 567, 578, 106 S.E.2d 258, 264 (1958).

construction to limit or expand the statute's operation." *Gilstrap v. S.C. Budget and Control Bd.*, 310 S.C. 210, 423 S.E.2d 101 (1992). Subsequently, in *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 230, 612 S.E.2d 719, 723 (Ct. App. 2005), the Court of Appeals held that:

> The cardinal rule of statutory interpretation is to determine the intent of the legislature. The legislature's intent should be ascertained primarily from the plain language of the statute. The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy.

(Internal citations omitted)

Therefore, given the plain and ordinary meaning of the aforementioned provisions of the Tort Claims Act, Plaintiff's causes of action against the Defendant Sheriff must fail as a matter of law.

## II. TO EXTENT THAT THIS COURT FINDS THAT DUECKER ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT, THE DEFENDANT SHERIFF IS ENTITLED TO ABSOLUTE SOVERIGN IMMUNITY FOR STATE LAW CLAIMS[7]

### A. Negligence/Gross Negligence

In the Second and Ninth Causes of Action of her Amended Complaint, Plaintiff alleges that Duecker was negligent, grossly negligent, and negligence per se, during the relevant times. *See*, Dkt 12, ¶¶ 33-36, 65-70.

In *Wyatt v. Fowler*, 326 S.C. 97, 484 S.E.2d 590 (1997), the South Carolina Supreme Court ruled that a sheriff and his deputies were entitled to judgment as a matter of law on a negligence action arising out of the execution of an arrest warrant. The Supreme Court

---

[7] To the extent applicable, the Defendant Sheriff reserves the right to assert additional legal defenses as to the causes of action for Assault (Sixth Cause of Action) and Battery (Seventh Cause of Action) in its Reply.

concluded that "the state does not owe its citizens a duty of care to proceed without error when it brings legal action against them." 484 S.E.2d at 592. The Court explained that "police owe a duty to the public at large and not to any individual." *Id*. Consequently, *Wyatt* demonstrates that South Carolina does not recognize a cause of action for negligent arrest or a negligent performance of a criminal investigation.

Moreover, it is well settled under South Carolina law that intentional torts "cannot be committed in a negligent manner." *State Farm Fire and Cas. Co. v. Barrett*, 340 S.C. 1, 530 S.E.2d 132, 137 (2000). Likewise, in *Wannamaker v. Traywick*, 136 S.C. 21, 134 S.E. 234 (1926), the Supreme Court explained that the term "negligence" is "ordinarily used in common-law terminology to express the foundation for civil liability for injury to person or property, when such injury is not the result of premeditation and formed intention." 134 S.E. at 235. Thus, intent and negligence are mutually exclusive, and there is no claim of negligence that flows from intentionally tortious conduct.[8]

The Defendants allege that the entire investigatory process as well as the pursuit of, obtaining an arrest warrant, and subsequent execution are functions which were by its very nature conducted with premeditation and formed intention. Hence, these acts would fall within one of the established tort classifications of which an intent to commit the act complained of (whether or not harm is intended) is an element, such as theft or willful, wanton, or reckless conduct that causes injury to another. As a consequence, intent to commit a wrongful act (*i.e.* intent to harm) is not a material element of ordinary actionable negligence.

### B.    False Imprisonment

Plaintiff's third cause of action alleges false imprisonment. *See*, Dkt 12, ¶¶ 38-40.

---

[8]    For example, negligence and battery are mutually exclusive, and there is no such cause of action as negligent assault and battery. See, *Restatement (Second) of Torts*, § 282 cmt. d (1965).

South Carolina law has "definitively decided" and long recognized " that where one is properly arrested by lawful authority, an action for false imprisonment cannot be maintained against the party causing the arrest. *See*, *Bushardt v. United Inv. Co.*, 121 S.C. 324, 113 S.E.2d 637, 639 (1922); *see also, Manley v. Manley*, 291 S.C. 325, 353 S.E.2d 312 (1987) ("Where one is arrested by lawful authority, an action for false imprisonment cannot be maintained.); see also *Dorn v. Town of Prosperity*, 375 Fed. Appx. 284, 288 (4th Cir. 2010) (recognizing "the long-standing precedent in South Carolina that there can be no claim for false arrest where the arrest is effectuated pursuant to a facially valid warrant"); Smith v. Koon, No. CV 3:19-2155-JMC-SVH, 2020 WL 4437982, at *16 (D.S.C. Aug. 3, 2020)

In Duecker's sworn statement to investigators, he described his interaction with Plaintiff:

Q:    When you entered the threshold of the door, into the home, what were your intentions?

A:    To place her into investigative detention in an effort to calm her down, then release her.

Q:    What do you define investigative detention as?

A:    Not yet under arrest, placed into handcuffs. Kind of cool your heels until we determine whether or not a crime had been committed. I believed that she may [have] commit[ted] the crime of filing a false complaint. I believe the statute is [S.C. Code Ann. § ] 16-17-725.

*See*, Exh. A.

Thus, the evidence reflects that Plaintiff was subjected to an investigatory detention permissible under *Terry v. Ohio*, 392 U.S. 1 (1968). In accordance with *Terry*, a police officer may stop and briefly detain and question a person for investigative purposes when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person may be involved in criminal activity. An officer is required "to have a reasonable suspicion that criminal activity is afoot before he may conduct a brief investigatory

stop of a person." *U.S. v. Brugal*, 209 F.3d 353, 358 (4th Cir. 2000). "The standard is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.,* at 359.

The Defendant Sheriff incorporates by reference the Defendant Duecker's Memorandum in Support of Summary Judgment, and specifically, Duecker's argument that probable cause existed for Plaintiff's arrest. *See*, Dkt 34, pp. 6-8. This Defendant would submit that, to the extent that this Court opines that probable cause existed at the relevant times, the relatively lower legal threshold of articulable, reasonable suspicion is satisfied. Thus, Duecker's attempts to place Plaintiff in investigatory detention was undertaken with lawful authority and, as a result, Plaintiff's false imprisonment fails.

### C.    Intentional infliction of emotional distress

Plaintiff's fourth cause of action is the state law tort of intentional infliction of emotional distress. *See*, Dkt 12, ¶¶ 41-46. South Carolina Code Ann. § 15-78-30(f) provides that a "loss" recoverable under the Tort Claims Act" does not include the intentional infliction of emotional harm." Therefore, there is no remedy for the alleged intentional infliction of emotional distress and the Defendant Sheriff is entitled to summary judgment on this cause of action.

### D.    Defamation

That as to Plaintiff's defamation claim in her fifth cause of action, the Defendant Sheriff asserts that he is entitled to the affirmative defense of conditional or qualified privilege. *See*, Dkt 12, ¶¶ 47-51. Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if: (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). When the occasion gives rise to a qualified privilege, a prima facie presumption to rebut the inference

of malice exists, and the plaintiff has the burden to show either actual malice *or* that the scope of the privilege has been exceeded.  *See, Kunst v. Loree*, 424 S.C. 24, 43, 817 S.E.2d 295, 304-05 (Ct. App. 2018).  (Emphasis in original)  Should this Court find that actual malice did not exist in this matter, the Defendant Sheriff is entitled to a qualified privilege.

## E.   Malicious Prosecution

Plaintiff's eighth cause of action alleges malicious prosecution.  *See*, Dkt 12, ¶¶ 58-64.

Under South Carolina law, a plaintiff must plead and prove each of the following elements to state a cause of action for malicious prosecution: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damages.  *See*, *McBride v. School District of Greenville County*, 698 S.E.2d 845, 855 (2010).

Under the provisions of the South Carolina Tort Claims Act, the Defendant Sheriff enjoys absolute immunity for malicious prosecution.  One of the six elements that the Plaintiff needs to prove is "the institution or continuation of original judicial proceedings."  *Id*.  In virtually identical language, S.C. Code Ann. § 15-78-60(23) provides absolute immunity for the "institution or prosecution of any judicial or administrative proceeding."  *See*, S.C. Code Ann. § 15-78-60(23).  Therefore, because an element of a malicious prosecution cause of action falls squarely within an immunity provision, a governmental entity enjoys absolute immunity for this cause of action.

This very issue was adjudicated in the case of *McCoy v. City of Columbia*, 929 F.Supp.2d 541 (D.S.C. 2013), where District Judge Joseph F. Anderson Jr. correctly ruled that a malicious prosecution claim against a municipality was barred by S.C. Code Ann. § 15-78-60(23).  Judge Joseph F. Anderson, Jr. wrote as follows:

> The City also contends that it is immune from liability for McCoy's

> malicious prosecution claim under the SCTCA's immunity relating to "the institution or prosecution of a judicial proceeding." S.C. Code Ann. § 15-78-60(23). The Magistrate Judge recommended that the court grant the City's motion for summary judgment on this issue because McCoy's cause of action for malicious prosecution plainly falls within this express exception. The court agrees.

929 F.Supp.2d at 567, n. 10

The United States District Court, by and through various District Court judges, has ruled in accordance with Judge Anderson's finding and, specifically, that the governmental entity enjoys immunity for malicious prosecution under the provisions of the Act. *See, Terrell v. City of Spartanburg*, No. 7:17-CV-2738-BHH, 2018 WL 4775579 (D.S.C. Oct. 3, 2018) ("The City is immune from liability for malicious prosecution under the South Carolina Tort Claims Act. S.C. Code Ann. § 15-78-60(23) … "); *see also, Thompson v. City of Columbia*, No. CV 3:05-1605-CMC, 2005 WL 8164911, at *4 (D.S.C. July 21, 2005) ("It is fairly clear from the plain language of the statute, particularly § 15-78-60(23), that the legislature intended to exclude claims for malicious prosecution from the waiver of immunity for governmental entities in the Tort Claims Act."); *see also, Palmer v. Santanna*, No. 2:16-CV-3350-PMD-MGB, 2018 WL 1477600, at *5 (D.S.C. Mar. 27, 2018) ("The Town of Summerville is immune from liability on this claim (as a result of) S.C. Code Ann. § 15-78-60(23); … While the Court recognizes that Plaintiffs experienced significant consequences as a result of Mr. Palmer's arrest and detention, the Defendants are nonetheless immune from suit …"); *see also, Brown v. Dorchester Cty. S.C.,* No. 2:16-CV-01311-MBS-MGB, 2017 WL 9673618, at *6 (D.S.C. Nov. 29, 2017) ("[T]he crux of Plaintiff's claim against Defendant is that the criminal charges against him were maintained for many months after the Solicitor's Office was made aware that probable cause was lacking. Such a claim falls squarely within § 15-78-60(1) and § 15-78-60(23).")

Because of these reasons, Plaintiff's malicious prosecution claim should be dismissed.

**III. PLAINTIFF'S CAUSE OF ACTION RELATING TO THE DEFENDANT'S NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION IS WITHOUT MERIT AND SHOULD BE DISMISSED**

**A.    <u>Generally</u>**

In her tenth cause of action in her Amended Complaint, Plaintiff brings causes of action with respect to negligent hiring, negligent retention, and lack of supervision.

In *James v. Kelly Trucking Co*., 377 S.C. 628; 661 S.E.2d 329, (2008), the Supreme Court held that:

> Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort.
>
> In circumstances ***where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public***, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.
>
> As this recitation suggests, the employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence. Stated differently, the employer's liability under this theory is not derivative, it is direct.

*See Id*., at 330-331,  (Internal citations omitted) (Bolded for emphasis)

"To state a claim for negligent retention, a plaintiff must allege the employer had knowledge of its employee's habit of prior wrongdoings, and despite the foreseeability of the harm to third parties, the employer failed to terminate the offending employee before he caused the harm."  *See*, *Callum v. CVS Health Corp.,* 137 F.Supp.2d 817, 860 (D.S.C. 2015).

However, our Courts have addressed the type of wrongdoing which would provide suitable notice to the employer.   Thus, any prior act must bear key similarities to the consequent ultimate harm, *to wit*:

Our review of negligent hiring and retention cases from other jurisdictions leads us to conclude that such cases generally turn on two fundamental elements -- knowledge of the employer and foreseeability of harm to third parties. These elements, from a factual perspective, are not necessarily mutually exclusive, as a fact bearing on one element may also impact resolution of the other element. ***From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused.*** Such factual considerations -- especially questions related to proximate cause inherent in the concept of foreseeability -- will ordinarily be determined by the fact finder, and not as a matter of law. ***Nevertheless, the court should dispose of the matter on a dispositive motion when no reasonable fact finder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard.***

*See, Doe v. ATC, Inc.*, 367 S.C. 199, 624 S.E.2d 447, 450 (Ct. App. 2005). (emphasis added)

As will be shown herein, there is no competent evidence that Duecker engaged in previous conduct for which to place RCSD on notice that he created an unreasonable or undue risk of harm to the public. As a result, Plaintiff's claim that the Defendant Sheriff is directly and independently liable is without merit and this cause of action should be dismissed.

By way of background, Duecker was hired with the City of Columbia Police Department ("CPD") in October 2011 as a patrol officer. *See*, Duecker depo., p. 7. In August 2014, he resigned CPD to pursue a bachelor's degree at Columbia International University. *Id*., pp. 10, 12. Duecker began employment with the RCSD in April 2017. *Id*., p. 13.

In Plaintiff's Amended Complaint, she alleges that, "RCSD reasonably knew, or had a reasonable reason to know, of the ability to control Duecker and that he would likely commit the acts against the Plaintiff or other persons subject to his authority granted him by RCSD as alleged above." *See*, Dkt 12, ¶ 74. In support of her contention, Plaintiff points to two particular examples in which the Sheriff knew, or should have been aware of Duecker's propensities prior to his RCSD tenure. The first instance ("Hassell arrest") concerns a February 2014 DUI arrest that Duecker made as a CPD officer. The second occasion

("Gaskins arrest") centers on Duecker's May 2018 arrest for Public Disorderly Conduct while a RCSD deputy. *Infra*.

The Defendant Sheriff would address each instance in turn.

Hassell arrest: On February 19, 2014, then-CPD Officer Duecker detained and/or arrested Darris Hassell for Driving Under the Influence ("DUI"); S.C. Code § 56-5-2930. *See*, Dkt 12, ¶ 10. Following an apparent dismissal of the criminal charge, Hassell filed an action alleging various torts in the Court of Common Pleas against the City of Columbia [C/A No.: 2016-CP-40-0910]. *See*, *Id*., ¶ 11. On May 19, 2017, a Richland County jury returned a verdict against the City of Columbia in the amount of $200,075.00. *Id*.

Taking the facts in a light most favorable to Plaintiff, by the time Duecker was hired by the RCSD in April 2017, Hassell's DUI charge had undergone prosecution and been dismissed. Beyond this criminal disposition, Hassell's civil suit had neither been publicized or fully litigated at the time of his hiring. In fact, Hassell's Complaint (filed February 11, 2016) and his Amended Complaint (filed March 23, 2016) only named the City of Columbia Police Department and the City of Columbia as party-Defendants. *See*, Exh. C. Neither pleading identified or referenced Duecker as a party or fact witness. Thereafter, the civil trial was conducted roughly one month following his RCSD hire. *See*, Exh. D. Therefore, Plaintiff's allegation that Hassell's civil action, trial, and verdict constituted 'red flags' for the Sheriff at the time of his April 2017 hire is simply without merit.

Gaskins arrest: On May 13, 2018 (roughly nine months prior to the relevant events), then-RCSD Deputy Duecker, responded to the residence of an individual named Darius Gaskins related to a domestic disturbance. *See*, Dkt 12, ¶ 13. On this occasion, Plaintiff alleges that Duecker had been discussing with Gaskins the nature of the disturbance. *Id*. When "Duecker determined that Gaskins' volume was too high," Duecker "rushed Gaskins with handcuffs." *Id*. At some point, Duecker tased Gaskins. *Id*. Gaskins was charged with

Public Disorderly Conduct pursuant to S.C. Code § 16-17-530.  *See*, *Id*., ¶ 14.  This charge was subsequently dismissed.  *See*, *Id*., ¶ 16.

In the Gaskins episode, Plaintiff does not allege, nor can she establish, that Duecker acted inappropriately or unlawfully either with respect to the detention, arrest, or force used upon Gaskins.  There is no evidence of any disciplinary action by the Sheriff or Duecker's supervisors.  There is no showing that probable cause was lacking.  Furthermore, there are no indications in the record that Duecker deployed his taser more than once or that the force itself was unwarranted, unreasonable, or excessive.

However, assuming *arguendo* that this Court views the existence of these arrests or events as relevant to the instant negligent employment claim, the Hassell and Gaskins circumstances were of a different and distinct nature that fail to establish a foreseeable risk for the wrongful misconduct as is alleged in the case at bar.  More so, Plaintiff cannot point to any previous occasion or circumstance in which the Defendant Sheriff had actual or constructive knowledge that Duecker had the propensity for (1) intending to harm a subject; (2) acting with actual malice; (3) effectuating unreasonable or excessive force; (4) committing an assault or battery; or (5) repeatedly tasing a subject, female or male, without plausible justification.   Put differently, summary judgment is warranted, pursuant to *Doe v. ATC* Court, *Supra*, given that no reasonable fact finder can find a nexus or similarity between any prior acts and the ultimate harm caused.

As a result, Plaintiff's claim for negligent supervision fails for a lack of evidence of foreseeability.  In the absence of evidence that the RCSD knew or should have known of the necessity to exercise control over its employee, there can be no liability for negligent supervision.  *See, Brockington v. Pee Dee Mental Health Center*, 315 S.C. 214, 433 S.E.2d 16 (Ct. App. 1993).

## **CONCLUSION**

For these reasons, there is clearly an absence of evidence to support Plaintiff's case and Plaintiff's causes of action against the Defendant Sheriff Lott in his official capacity must therefore be dismissed as a matter of law.

Respectfully submitted,

CROWE LAFAVE, LLC

BY:  *s/ Robert D. Garfield*
ROBERT D. GARFIELD
Federal I.D. No. 7799
Post Office Box 1149
Columbia, South Carolina 29202
T: (803) 999-1225
F: (803) 848-8157
robert@crowelafave.com

*Counsel for the Defendant*
*Sheriff Lott in his official capacity*

Columbia, South Carolina

October 7, 2020