IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sheila Webb,<br><br>        Plaintiff,<br><br>    v.<br><br>Leon Lott, in his official capacity as Sheriff of the Richland County Sheriff's Department; and Cameron Duecker,<br><br>        Defendants. | C/A No.  3:19-cv-2031-CMC<br><br>Order Denying Motion<br>For Judgment as a Matter of Law<br>or for a New Trial Absolute,<br>or, in the alternative,<br>for a New Trial Nisi Remittitur<br>(ECF No. 197) |

This matter is before the court on motion of Defendant Leon Lott, in his official capacity as Sheriff of Richland County Sheriff's Department ("Defendant Lott") for judgment as a matter of law or for a new trial absolute, or, in the alternative, for a new trial nisi remittitur.  ECF No. 197.  Plaintiff Sheila Webb ("Webb" or "Plaintiff") filed a response in opposition. ECF No. 200. Defendant Lott filed a reply (ECF No. 217), and Webb filed a sur reply (ECF No. 220).  Defendant Cameron Duecker ("Duecker") did not file a response. For the reasons below, Defendant Lott's motion is denied.

**BACKGROUND**

Webb filed her Complaint in the Richland County Court of Common Pleas, alleging violations of her constitutional rights as well as state law claims when she was arrested in her home in February 2019.  ECF No. 1-1.  Defendants removed the matter to this court.  Federal claims for unreasonable seizure and excessive force against Duecker; state law claims for gross negligence, false imprisonment, assault, battery, and negligent retention and supervision against Defendant Lott, proceeded to jury trial.  The jury found for Webb and awarded $50,000 against Duecker on the unreasonable seizure and excessive force claims; Webb prevailed on her claims for gross

negligence, assault, battery, and false imprisonment against Defendant Lott; but the jury found for Defendant Lott on the negligent retention and supervision claims. ECF No. 186. The verdict against Defendant Lott was $500,000 but was reduced to $300,000 in accordance with the South Carolina Tort Claims Act cap on damages. S.C. Code Ann. § 15-78-120(a)(1); ECF No. 191.

### STANDARD

"When the loser of a jury trial challenges the verdict under Federal Rule of Civil Procedure 50(b), the question is whether a jury, viewing the evidence in the light most favorable to [the winning party], could have properly reached the conclusion reached by this jury." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 784 (4th Cir. 2023) (citing *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). In other words, under Fed. R. Civ. P. 50(b), a district court may grant judgment as a matter of law only if the "court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999); *see also Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (finding a district court may grant a judgment notwithstanding the verdict "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party."). The evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the prevailing, non-moving party. *Wickersham v. Ford Motor Co.,* 997 F.3d 523, 534 (4th Cir. 2021). The court may, on ruling on a Rule 50(b) motion, allow judgment on the jury verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

Motions for new trials are governed by Rule 59 of the Federal Rules of Civil Procedure. A "court may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.

R. Civ. P. 59(a)(1)(A). In the Fourth Circuit, the court should "set aside the verdict and grant a new trial" only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021). Unlike the procedure under Rule 50(b), on a motion for a new trial under Rule 59(e), a district court is permitted to weigh the evidence. *Hicks v. Ferreyra*, 64 F.4th 156, 175 (4th Cir. 2023).

## DISCUSSION

Defendant Lott's motion alleges certain errors at trial, and requests the court grant judgment as a matter of law, a new trial, or a new trial nisi remittitur. ECF No. 197-1. Specifically, he argues errors in the jury instructions regarding the assault, battery, and false imprisonment claims; error in the court's grant of judgment as a matter of law for Webb on the affirmative defense of crime of moral turpitude; error in the court's analysis of the defense of scope of official duties; error in excluding evidence regarding Duecker's termination, charges for assault, and revocation of law enforcement certification; and error in admitting evidence of body camera footage of another incident without a proper foundation. He also requests the verdict be reduced, or a new trial granted, to prevent double recovery.

Webb objects to each assertion of error.  She contends many, if not all, arguments were waived by counsel's failure to raise them at the proper time.  She also raises substantive objections.

As an initial matter, the court notes the jury instructions and verdict form were reviewed with counsel and edited several times. The court finds objections regarding jury instructions or verdict form, including affirmative defenses, were preserved if they were raised at the charge

3

conference, and then incorporated by reference after the jury was charged.  See ECF No. 213 at 205.

1. **Jury Instructions**

Defendant Lott argues the jury instructions were flawed in three ways fatal to various causes of action under the Tort Claims Act.

The Fourth Circuit reviews jury instructions to "simply determine whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Snoeyenbos v. Curtis*, 60 F.4th 723, 731 (4th Cir. 2023). Jury instructions must be considered as a whole – a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 733 (citing *United States v. Park*, 421 U.S. 658, 674 (1975)).  "Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the [opposing party's] case." *Id.* (citing *Hardin v. SkiVenture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995)).  Accordingly, "problems in jury instructions will not warrant reversal of a jury verdict so long as, taken as a whole, the instructions adequately state the controlling legal principles."  *Id.* (citing *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 485 (4th Cir. 2007)).

a. *Assault*

Defendant Lott first argues the court erred in instructing the jury that "assault by a sheriff's deputy in the performance of his duties is among the acts for which a sheriff may be liable," because *Scott v. Vandiver*, 476 F.2d 238 (4th Cir. 1973), from which he contends this statement was drawn, is no longer good law after the enactment of the South Carolina Tort Claims Act. ECF No. 197-1 at 3-7.  Defendant Lott asserts *Scott* dealt with S.C. Code Ann. § 23-13-10, which was

4

impliedly repealed by enactment of the Tort Claims Act.  Therefore, he submits, *Scott* "no longer accurately states South Carolina law."  *Id.* at 3.

Webb responded, arguing Defendant Lott failed to preserve this issue for review when counsel did not object to this instruction when proposed jury instructions were submitted, or to the initial draft circulated by the court in October 2022. ECF No. 203 at 14. Instead, she asserts, counsel merely mentioned this instruction as "a little confusing" at the hearing on January 5, 2023. *Id.* Substantively, Webb contends Defendant Lott's argument that § 23-13-10 was impliedly repealed by the Tort Claims Act is not relevant where the instruction at issue remains good law. She notes the portion of *Scott* repealed by the Tort Claims Act was not the statement cited in the jury instructions here. *Id.* at 16. In addition, she asserts current law is consistent with this instruction, and even if it was incorrect, the record as a whole supports the verdict on the assault cause of action and any error is harmless. *Id.* at 17-18.

In reply, Defendant Lott contends counsel did not waive this argument, but objected to this instruction and the reliance on *Scott* at the charge conference held January 11, 2023.  ECF No. 217 at 3.[1] Further, he argues the instruction from *Scott* is no longer good law because the Sheriff is no longer liable for any and all circumstances involving assault by a sheriff's deputy. Such an interpretation, he asserts, "would read Tort Claims Act immunities out of the analysis of any assault claim." *Id.* at 4.  He contends this instruction confused the jury and prejudiced Defendant Lott's defense, so was not harmless error.  *Id.*

---

[1] The court agrees this issue was raised at the charge conference and thus not waived.  See ECF No. 213 at 75-79 (Trial tr. at 573-577).

5

Webb filed a sur-reply, citing *Horton v. City of Columbia*, 757 S.E. 2d 537 (S.C. Ct. App. 2014)[2] and *Barfield v. Kershaw Cnty. Sheriff's Office*, 638 F. App'x 196, 201 (4th Cir. 2016), for the proposition liability may attach to the governmental agency if a sheriff's deputy commits tortious acts. ECF No. 220 at 2. She references testimony supporting the assault verdict, and asserts the objection to this instruction was untimely. *Id.* at 3-7. Webb explains the Tort Claims Act allows a plaintiff to name as the party defendant only the agency or political subdivision, not an individual employee, but that South Carolina law imposes "liability on sheriffs for such illegal action of their deputies." *Id.* at 8-9 (citing *Brunson v. Hyatt*, 409 F. Supp. 35 (D.S.C. 1976)). Finally, she disagrees a strict liability standard was applied based on the court's inclusion of the statement that "assault by a sheriff's deputy in the performance of his duties is among the acts for which a sheriff **may** be liable." *Id.* at 10.

        *i.  Analysis*

Included in the court's jury instruction on the Tort Claims Act affirmative defenses was the phrase "[f]or example, assault by a sheriff's deputy in the performance of his duties is among the acts for which a sheriff may be liable." ECF No. 184 at 15:17-18. In this section, the court was explaining the affirmative defenses raised by Defendant Lott; specifically, the defense that Duecker was not acting within the scope of his official duties. The relevant jury instruction stated:

> [i]f Duecker's action was done to further or accomplish RCSD's business or is necessary to accomplish RCSD's business, then he can be considered as "acting in and about the official business of a governmental entity." **For example, assault by a sheriff's deputy in the performance of his duties is among the acts for which a sheriff may be liable.** Moreover, when a sheriff's deputy uses force

---

[2] Although the case was originally at this citation, the South Carolina Supreme Court ordered this opinion depublished and assigned an unpublished opinion number. The opinion can be found at 2014 WL 10009645.

greater than is reasonably necessary under the circumstances, the agency may be liable for battery.

However, if he was acting for his own personal motivation, his conduct is not within the scope of such duties. The law does not protect an employee who uses his authority for nothing more than to personally retaliate against someone. You are required to do your own analysis of whether Duecker was acting in his own personal interest or in the interest of RCSD when he committed the alleged acts against Plaintiff.

*Id.* at 15:15-16:5.

The Tort Claims Act makes clear it "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b)." S.C. Code Ann. § 15-78-70(a). Subsection (b) states an employee does not have immunity from suit and liability if it is proved the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. *Id.* at (b). Importantly, subsection (c) notes, for claims brought on or after January 1, 1989,

a person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually. . . . In the event the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant.

*Id.* at (c). This court has found "[t]he SCTCA clearly applies to a Sheriff and his deputies because the term 'employee' is defined in the SCTCA as including elected officials and law enforcement officers." *Robinson v. Metts*, 86 F. Supp. 2d 557, 564 (D.S.C. 1997) (citing S.C. Code Ann. § 15-78-30(c)).

7

Further, courts have consistently held, after the enactment of the Tort Claims Act, that an employee of a governmental entity who commits a tort while acting within the scope of his official duties is generally not individually liable and, under state law, the plaintiff must sue the governmental agency itself. *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (citing S.C. Code Ann. § 15–78–70(a)). However, if the governmental entity proves "the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," then it is not liable, and the employee is personally liable. *Id.* (citing S.C. Code Ann. §§ 15–78–70(b); § 15–78–60(17)).

Defendant Lott contends the sentence highlighted above charged strict liability in violation of the Tort Claims Act. However, the court changed the language from *Scott* that said, "assault by a sheriff's deputy in the performance of his duties **is** among the specific acts for which a sheriff is liable," (emphasis added), noting "assault by a sheriff's deputy in the performance of his duties is among the acts for which a sheriff **may** be liable" (ECF No. 184 at 15 (emphasis added)). The instruction then explained when that would be the case, and when it would not be (if an affirmative defense was proved). The instruction therefore did not charge strict liability, and certainly did not "read the immunities out" of the analysis of the assault claim. In fact, the sentence of which Defendant Lott complains is in the section on immunities. Taking the instructions as a whole, therefore, they adequately state the legal principles at play.

Accordingly, the court declines to order a new trial based on this argument.

b. *Battery*

Next, Defendant Lott asserts the court erred in instructing the jury regarding battery when it charged "when a sheriff's deputy uses force greater than is necessary under the circumstances,

the agency may be liable for battery." ECF No. 197-1 at 8. He presumes the court "also relied on *Scott* and S.C. Code Ann. § 23-13-10 for including this instruction." *Id.*

Webb argues the battery instruction is a correct statement of the law as seen in *Barfield*. ECF No. 203 at 20. She also contends this argument was waived, and that taking the record and the balance of the jury instructions into account, the instruction did not cause misapplication of the law. *Id.* On reply, Defendant Lott notes counsel did object to this instruction during the charge conference. ECF No. 217 at 5.[3]

*i. Analysis*

The challenged instruction on battery comes directly from the Fourth Circuit case of *Barfield*, which held, after passage of the Tort Claims Act, "when a Sheriff's deputy uses force greater than is reasonably necessary under the circumstances, the governmental agency **may** be liable for battery." 638 F. App'x at 201 (emphasis added). This court therefore did not rely on *Scott* or S.C. Code Ann. § 23-13-10 for this instruction, and thus those arguments are misplaced. For the same reasons explained in the Assault section, the court did not charge strict liability in violation of the Tort Claims Act. Rather, the court charged the affirmative defenses appropriately raised and used "may" instead of "is" in the challenged section.

*c. False Imprisonment*

Defendant Lott also argues the court erred in instructing the jury on false imprisonment when it charged "[t]he fundamental issue in determining the lawfulness of restraint in this case is whether there was a warrant, or probable cause accompanied by an exigent circumstance to arrest

---

[3] This argument was not waived, as it was raised at the charge conference on January 11, 2023, and reincorporated by reference after the charge. See ECF No. 213 at 75-79 (Trial tr. at 573-577).

Plaintiff without a warrant. In the absence of either of these, the restraint is unlawful." ECF No. 197-1 at 8 (citing ECF No. 184 at 15)). Because false arrest may only be asserted for a warrantless arrest, Defendant contends, inclusion of probable cause is unnecessary, and the court erred in "inject[ing] an exigent circumstances requirement" in the jury instructions on this claim.

Webb contends Defendant Lott did not properly preserve this argument and, even if the instructions regarding warrant and exigent circumstances were superfluous, Defendant Lott failed to establish they caused the jury to act in ignorance of or misapply controlling legal principles to Defendant's prejudice.  ECF No. 203 at 22.

Defendant Lott notes counsel raised this issue at the charge conference,[4] and continues to assert the warrant and exigent circumstances language should not have been in the charge. ECF No. 217 at 6.  Webb details evidence supporting the false imprisonment cause of action  and asserts the instruction was a correct statement of the law. ECF No. 220 at 10.

### i.   Analysis

"The essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification." *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 651 (S.C. 2006) (citations omitted). Accordingly, to prevail on a claim for false imprisonment, "the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Id.* (citations omitted).

South Carolina law notes the fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest.  *Law*, 629 S.E.2d at 651. In this case,

---

[4] The court agrees this argument was raised at the charge conference during trial, and therefore it was not waived.  See ECF No. 205 at 18-22.

Duecker did not merely arrest Webb, but came into her home, uninvited and without a warrant, in order to do so. Because he had no warrant, he needed probable cause accompanied by exigent circumstances to enter the home and arrest Webb, or he needed permission to enter the home.[5] The instruction adequately stated the correct legal principles, and Defendant Lott was not prejudiced by any allegedly superfluous language.

### 2. **Affirmative Defenses**

Defendant Lott's next asserted grounds for new trial involve the affirmative defenses in the Tort Claims Act and a related evidentiary issue.

#### a. *Moral Turpitude*

First, Defendant Lott claims the court "misapplied South Carolina law on what constitutes a crime of moral turpitude," and erred in granting judgment as a matter of law in Plaintiff's favor on that affirmative defense. ECF No. 197-1 at 13. He cites *Baddourah v. McMaster*, 856 S.E. 2d 561 (S.C. 2021), and asserts the "crime committed by the Defendant Duecker rises to the level of a crime of moral turpitude as a matter of law" because it violates the "likely to result in moderate bodily injury" standard. *Id.* at 13-14. Defendant Lott requests the court rule as a matter of law that Duecker's conduct constitutes a crime of moral turpitude and therefore Lott is entitled to immunity on each of the state tort claims. In the alternative, he asserts the defense should have been submitted to the jury and therefore a new trial should be granted. *Id.*

---

[5] Defendant Lott argues S.C. Code Ann. § 17-13-30 allows an officer or deputy to arrest without a warrant any person who, within their view, violates any of the laws of the state. At the time Duecker entered the home, Webb had not committed any crimes within his view. The crimes with which she was subsequently charged, disorderly conduct and assault while resisting, occurred while Duecker was in Webb's home, and were later dismissed.

11

Webb contends, in response, Defendant Lott failed to identify evidence that a reasonable juror could find in his favor, as required to submit the defense of crime of moral turpitude to the jury. ECF No. 203 at 25. She also claims the argument was waived, and Duecker had no intention to harm Webb and therefore could not have committed a crime of moral turpitude.

In reply, Defendant Lott asserts the test in *Baddourah* for a crime of moral turpitude is that the conduct was "likely to result in moderate bodily injury." ECF No. 217 at 7. He contends Duecker's conduct constituted "grave and excessive acts of unwarranted violence" and meets this standard. *Id.* at 8. He "urges" the court to grant a new trial or certify the question to the South Carolina Supreme Court. *Id.* Webb, however, contends the record is replete with evidence negating the defense, and Defendant has failed to come forward with evidence showing the defense should have been presented to the jury. ECF No. 220 at 14.

> ### i. Analysis

In South Carolina, whether an offense is a crime of moral turpitude depends on the facts of the particular case but is defined as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Baddourah*, 856 S.E.2d at 571. The court agrees South Carolina courts "focus primarily on the duty to society and fellow man which is breached by the commission of the crime." *Id.* at 573. However, *Baddourah* went on to analyze domestic violence before concluding "in light of the prevalence of domestic violence nationally, and the overwhelming statistics for South Carolina in particular, there can be no doubt that domestic violence is an affront to the fundamental sanctity of the home and society." *Id.* at 574. The Court therefore found, *under the specific facts in that indictment*, Baddourah's conviction for second degree domestic violence was a crime of moral turpitude. *Id.* (emphasis added).

12

In this case, at the close of evidence, Webb moved for judgment as a matter of law on the affirmative defense of crime of moral turpitude. ECF No. 205 at 4. Defendant Lott argued in opposition[6], citing *Baddourah* for the proposition the "focus should be primarily on the duty to society and fellow man that is breached by the commission of the act," and the cumulative effect of conduct on society at large. ECF No. 205 at 8. The court granted the motion and held, as a matter of law, that Defendant Lott failed to produce sufficient evidence to support the affirmative defense Duecker committed a crime of moral turpitude. *Id.* at 9:17-18.

In its briefing on this motion, Defendant Lott for the first time cites *Baddourah* for the "standard" that a crime of moral turpitude involves conduct that is "likely to result in moderate bodily injury." While Defendant Lott raised *Baddourah* while arguing against judgment as a matter of law, he focused only on the "duty to society and fellow man," not the "moderate bodily injury" issue.

Regardless, the court reaffirms its finding of judgment as a matter of law in favor of Webb on the affirmative defense of crime of moral turpitude. Duecker testified he did not intend to harm Webb, bore her no personal ill will, and had no malicious intent to cause her harm. ECF No. 211 at 144:22-25; 184:14 (Trial tr.). While he did employ the taser to attempt to gain Webb's compliance, he testified "I remember distinctly that one reason I went for the taser is because I had been trained it was the least likely to cause serious injury." *Id.* at 180:11-14. While Defendant Lott argues there was a special duty between a sheriff's deputy and the public that was violated, much like in domestic violence situations, such that a duty to society and fellow man was breached by Duecker's actions, there also must be an act of baseness, vileness, or depravity. That simply is

---

[6] This argument regarding the defense of crime of moral turpitude, therefore, was not waived.

not present here.[7]  Defendant's motion for a new trial or judgment as a matter of law on the affirmative defense of crime of moral turpitude is denied.[8]

          *b.  Scope of Official Duties*

Defendant Lott also contends the court erred in its analysis of the "scope of official duties" affirmative defense by failing to give proper weight to the statute explaining deputies serve at the pleasure of the sheriff, who determines what deputies' official duties actually are. ECF No. 197-1 at 15 (citing S.C. Code Ann. § 23-13-10)).  He argues because the deputy serves at the sheriff's pleasure, the sheriff's explanation of deputies' official duties "is entitled to dispositive weight." *Id.* Further, Defendant Lott asserts conduct of deputies even while on duty within the work setting can be outside the scope of official duties.  *Id.* at 16-17 (citing *Frazier v. Badger*, 603 S.E.2d 587 (S.C. 2004); *Loadholt v. South Carolina State Budget & Control Board*, 528 S.E.2d 670 (S.C. Ct. App. 2000); *Padgett v. South Carolina Insurance Reserve Fund*, 531 S.E.2d 305 (S.C. Ct. App. 2000); and *Doe v. South Carolina Budget and Control Board*, 494 S.E.2d 469 (S.C. Ct. App. 1997)).

Webb asserts it is Defendant Lott's burden to prove the affirmative defense Duecker acted outside the scope of his official duties. ECF No. 203 at 27.  She notes Lott failed to move for judgment as a matter of law as to this defense, and thus his motion for new trial should be denied. Further, she argues, reliance by Defendant on sexual assault cases has no bearing in this case.  *Id.* at 29.

---

[7] This is bolstered by the fact the jury found other affirmative defenses were not proved by Defendant Lott – that Duecker's actions did not constitute an intent to harm or actual malice. ECF No. 186 at 4 (Verdict Form).

[8] The court likewise declines to certify the issue to the South Carolina Supreme Court.

Defendant Lott did not discuss this point in his reply, but Webb again pointed to evidence of scope of official duties in her sur reply. ECF No. 220 at 21.

### i.  Analysis

The statute relied upon by Defendant Lott is S.C. Code Ann. § 23-13-10, which states:

> The sheriff may appoint one or more deputies to be approved by the judge of the circuit court or any circuit judge presiding therein. Such appointment shall be evidenced by a certificate thereof, signed by the sheriff, and shall continue during his pleasure. The sheriff shall in all cases be answerable for neglect of duty or misconduct in office of any deputy.

This statute does not say the sheriff determines a deputy's official duties.  Instead, it states a deputy's *appointment* "shall continue during the sheriff's pleasure," meaning the sheriff can terminate a deputy.  There is no mention whatsoever of official duties or their scope, or even the service of the deputy – merely the appointment.[9]  Further, Defendant Lott argued above that this very statute was "impliedly repealed" by the Tort Claims Act.

In addition, the cases cited by Defendant Lott are inapplicable here.  Yes, the cases found misconduct of police officers and governmental actors fell outside the scope of official duties, even when such conduct took place while the actor was on duty and within a work setting.  However, in each of the cases, the misconduct was sexual and in no way related to the actor's actual official duties.  *See Doe*, 494 S.E.2d at 473 ("No cogent argument can be made that Roberson was furthering the business of his employer at the time he sexually assaulted Appellants."); *Loadholt*,

---

[9]The South Carolina Supreme Court, considering a different issue, stated a deputy's service at the sheriff's pleasure "entails not only how long he serves, but how he serves." *Heath v. Aiken Cnty.*, 368 S.E.2d 904, 905-06 (S.C. 1988). However, as previously noted, *Heath* was decided prior to the Tort Claims Act, and also provides no further information about the scope of a deputy's duty, as that was not the question in that case.

528 S.E.2d at 674 (the "sexual assaults on Respondents clearly exceeded the scope of his official duties as Sheriff of Hampton County.").

Here, Duecker was at Webb's home on a call that came through dispatch, in his patrol vehicle, wearing his official uniform and the full kit of gear issued to him for patrol purposes, when he entered the home and interacted with Webb.[10]   He was investigating the situation, attempting to detain Webb, or to arrest her when the unlawful actions occurred.  He used his law enforcement supplied taser, within what he considered to be his training, to attempt to gain compliance when he injured Webb. The use of the taser, therefore, and the other physical force used by him, was for the purpose of gaining Webb's compliance and placing her in handcuffs for detention or arrest purposes. While Duecker's conduct was unfortunately aggressive, it does not rise, as a matter of law, to the level where no jury could find he was within the scope of his official duties.  In fact, this jury found he was not outside the scope of official duties.  Accordingly, the court will not grant a new trial on this basis.[11]

---

[10] Webb does not argue all possible conduct by Duecker while in his uniform and on duty would be within the scope of his official duties.  Clearly, if he had sexually harassed or assaulted her, that would not be the case.  However, no sexual touching was alleged here.

[11] Webb contends a new trial may not be granted because Defendant Lott failed to move for a directed verdict at the close of evidence. While this may be required under Fed. R. Civ. P. 50(b) for a renewed motion for judgment as a matter of law or new trial, under Rule 59, a party may move for a new trial if the verdict is against the clear weight of the evidence; is based upon evidence which is false; or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.  Although the court finds this issue was preserved for a Rule 59 motion as it was raised in briefing prior to the trial, Defendant Lott has not met the requirements for a new trial based on this issue under Rule 59.

16

c. _Admitting certain evidence_

Finally, Defendant Lott contends the court erred in refusing to admit post-incident evidence, including the arrest warrant against Duecker, or evidence that he was terminated and his law enforcement certification revoked. ECF No. 197-1 at 10-11. He asserts the evidence was relevant under Federal Rule of Evidence 404 and not too prejudicial under Rule 403. He also argues the ruling to exclude this evidence contradicts a previous order on bifurcation, in which Judge Childs identified Duecker's warrant for assault and battery as evidence "likely" to be submitted as evidence at trial. See ECF No. 68 at 4-5. Webb argues this evidence was not relevant, duplicative, and improper. ECF No. 203 at 27.

Prior to trial, Duecker's attorney filed a motion in limine to exclude testimony and documentary evidence pertaining to his termination from the Sheriff's Department, the criminal charge filed against him, and the suspension of his law enforcement certification, pursuant to Federal Rules of Evidence 401, 403, and 407. ECF No. 94. Webb filed a response in opposition (ECF No. 100 at 8); however, Defendant Lott did not file a response.

At a pretrial hearing on various motions in limine, the court addressed the request to exclude this evidence. Webb's counsel noted he intended to introduce the evidence against Defendant Lott as an admission against interest. ECF No. 215 at 14. The court determined that, as to admission against Duecker, the subsequent acts of termination, suspension of law enforcement certification, and arrest "are prejudicial and not necessary and do not prove what happened at the time of the incident involving Ms. Webb, so I would be inclined to grant Mr. Hayes' motion and exclude that evidence as against Mr. Duecker." _Id._ at 17:20-25. Defendant Lott's counsel then argued he should be able to introduce evidence Duecker was terminated, arrested, and his certification revoked. _Id._ at 21:4-9. After argument, the court determined

17

Defendant Lott would not be permitted to testify regarding subsequent events (such as Duecker's arrest, termination, and law enforcement certificate) occurring after the Webb incident.  *Id.* at 24:18-19; 24:24-25:4.[12]

The court found evidence of post-incident actions of terminating Duecker, revoking his law enforcement certification, and charging him with a crime were not relevant to what occurred during the incident with Webb and whether Duecker's conduct during that interaction violated Webb's rights and caused her harm.  Furthermore, the court determined admission of this evidence would be unfairly prejudicial to Duecker. Admission of this evidence, therefore, would have violated Federal Rules of Evidence 401 and 403.

Defendant Lott now contends the court "eliminated a key defense for Defendant Lott" and that "it is a violation of due process and fundamental fairness to exclude key evidence and reject a meritorious defense asserted by one Defendant because the evidence supporting that defense was prejudicial to another Defendant." ECF No. 197-1 at 12. The court, however, explained at the hearing that the firing or inclusion of criminal charges against Duecker did not constitute a defense for Defendant Lott, and counsel agreed. ECF No. 215 at 23:18-23.  Further, the court and counsel at that point were discussing the negligent supervision and retention claims, on which the jury found for Defendant Lott at trial.  To the extent Defendant Lott is arguing this evidence should

---

[12] Although Defendant Lott contends this ruling is contradictory to the court's earlier Order denying bifurcation or severance of claims, the court disagrees.  In the bifurcation Order (ECF No. 68), Judge Childs merely identified evidence "likely" to be introduced at trial in support of different claims, without specifically considering or analyzing any of the evidence and its admissibility under the Federal Rules of Evidence. With this later, more fulsome analysis, the court determined such evidence would not be admitted under the rules as not relevant and prejudicial.

have been admitted in order to prove the defense of crime of moral turpitude, it would not be relevant to that affirmative defense either.

For these reasons, the court finds no error in declining to admit evidence regarding Duecker's termination, charges, or revocation of law enforcement certificate. A new trial on these grounds is denied.

### 3. **Double Recovery**

Sheriff Lott contends the verdict form allowed a double recovery for Webb. The jury awarded $50,000 in compensatory damages on Webb's claims of unreasonable seizure and excessive force under § 1983, as well as $500,000 against Defendant Lott for gross negligence, assault, battery, and false imprisonment under the Tort Claims Act. Because the types of damages recoverable for these claims were the same, Defendant Lott argues, the jury verdict awarding Webb $50,000 in damages against Duecker on the § 1983 claims and $500,000 against Defendant Lott for gross negligence, assault, battery, and false imprisonment, is impermissible double recovery.[13] Defendant Lott asserts Webb's federal and state law claims "arose from the same, identical operative facts" and Webb "sought identical relief, i.e., compensatory damages." ECF No. 197-1 at 19. He requests the judgment against him be reduced to $50,000 by way of remittitur, or a new trial be ordered.

In response, Webb argues Defendant Lott did not preserve this ground for review or waived it by failing to object to the verdict form or the jury's verdict after it was rendered. She notes Defendant Lott argued for separate damages lines for state law claims, with one for the gross

---

[13] The verdict against Defendant Lott was reduced to $300,000 pursuant to the cap on damages in the Tort Claims Act.

negligence, assault, battery and false imprisonment claims and one for the negligent supervision and retention claim, but did not address the § 1983 damages line, even agreeing there was not a dispute over having a separate damages figure for the federal claims. ECF No. 203 at 29-30.  In addition, she contends the cases cited by Defendant Lott are distinguishable.  Finally, she asserts even if the damages from the § 1983 claims and state law claims constitute double recovery, she should be allowed to elect her remedies and would elect to recover the $300,000 from Defendant Lott. She notes Defendant Lott "provides no cogent argument . . . why reducing Defendant's judgment to $50,000 would still not be 'double recovery' in its analysis," so Lott's motion should be denied.

Defendant Lott did not reply.  However, Webb, in her sur reply, noted Defendant Lott is not responsible for the § 1983 damages against Duecker, and so the motion for remittitur and new trial should be denied.  ECF No. 220 at 26.

a. _Analysis_

As an initial matter, the court notes this issue was not raised pretrial, despite multiple opportunities for input into the verdict form. Neither was the specter of double recovery raised during trial or before discharge of the jury.  Although an issue was raised regarding different questions on the verdict form for state law claim damages – the parties specifically argued about one question for all state law claims versus one question for damages for Duecker's actions (gross negligence, assault, battery, false imprisonment) and another for direct liability for Defendant Lott (negligence retention/supervision) – no one raised an issue regarding separate questions for federal claims versus state law claims.  In fact, the court noted "well clearly we would have a separate damages question for 1983. That's not what we are talking about, right?"  Defendant Lott's counsel replied "correct." ECF No. 204 at 28:7-10.

20

In addition, the elements of the causes of action are different. *See Gregg v. Ham*, 678 F.3d 333, 343 (4th Cir. 2012) (affirming denial of new trial based on damages when § 1983 and assault claims "constituted separate violations"). Here, the jury found Duecker violated Webb's Fourth Amendment rights not to be subjected to unreasonable seizure and to be free from excessive force. ECF No. 186 (Jury verdict). The jury also found Defendant Lott liable for Duecker's actions in committing gross negligence, assault and battery, and falsely imprisoning Webb. ECF No. 186. As these are "separate violations," the jury could reasonably conclude Webb's actual damages stemmed from separate causes of action, *Gregg*, 678 F.3d at 343, and apportion damages between them differently. Moreover, Defendant Lott provides no basis for his argument damages should be reduced to $50,000, the amount awarded against Duecker on the § 1983 claims, rather than the amount of $300,000 awarded against him. Therefore, the motion to reduce the verdict or to grant a new trial is denied.

### 4. <u>Video of Prior Incident</u>

Finally, Defendant Lott argues the court erred in admitting body camera video of a prior tasing incident (the "Gaskins video") without first requiring a proper foundation. ECF No. 197-1 at 20. He contends Webb failed to present expert testimony regarding law enforcement standards of practice to lay a proper foundation or opine the actions in the video violated an applicable standard of care. Defendant Lott asserts this video was "highly prejudicial and presented no probative value," and a new trial should be ordered on this basis.

Webb submits this argument "must fail where Plaintiff did not prevail on the only claim relevant to the Gaskins video where the jury determined Plaintiff did not prove negligent supervision and retention." ECF No. 203 at 33. The court instructed the jury the video was admitted only on the claim of negligent retention and supervision, and not when deliberating on

the § 1983 or other state law claims.  ECF No. 184 at 12.  Webb also notes the argument was not preserved.

In reply, Defendant Lott notes the argument was raised in a motion in limine and at trial, so "there is no preservation issue."  ECF No. 217 at 9.  No other arguments were made in reply.

> a.  *Analysis*

This claim was properly preserved by Defendant Lott raising it at trial, prior to admission of the Gaskins video. ECF No. 211 at 102 (Trial tr. at 102).   However, the court agrees with Webb this argument is moot because the jury found against her on the negligent retention and supervision claims, and those were the only claims on which the video was admitted.  Further, the court gave a limiting instruction that the Gaskins video was only admitted for purposes of the negligent retention and supervision claims.  Accordingly, a new trial will not be granted on this ground.

## CONCLUSION

For the reasons set forth above,  Defendant Lott's motion for judgment as a matter of law, a new trial, or new trial nisi remittitur (ECF No. 197) is denied.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
August 9, 2023